J-S72030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAN DAVID HERNANDEZ JR., | : | |
| | : | |
| Appellant | : | No. 69 EDA 2017 |

Appeal from the Judgment of Sentence November 21, 2016
in the Court of Common Pleas of Northampton County,
Criminal Division at No(s):  CP-48-CR-0001021-2016

BEFORE:   BENDER, P.J.E., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.:                   **FILED JANUARY 18, 2018**

Dan David Hernandez, Jr. ("Hernandez"), appeals from the judgment of sentence imposed following his convictions of attempted murder, aggravated assault, firearms not to be carried without a license, possession of an instrument of crime, and recklessly endangering another person.  ***See*** 18 Pa.C.S.A. §§ 901; 2702(a)(4); 6106(a)(1); 907(a); 2705.  We affirm.

In April 2013, Hernandez took a vehicle, which had been involved in an accident, to Kinte King's ("King") auto repair shop located in Bethlehem, Pennsylvania.  On April 22, 2013, Hernandez went to the shop to discuss the estimate for the repairs with King.  Hernandez contested King's request for $300 for parts, and the two engaged in a verbal argument, which escalated into a physical altercation.  Hernandez eventually left the shop and called his uncle, Angelo Lopez ("Lopez"), about the confrontation.  Thereafter, Hernandez, who brought a firearm, and Lopez returned to King's shop.

_____
* Former Justice specially assigned to the Superior Court.

Lopez instructed Hernandez to remain in the vehicle while he spoke with King. However, Hernandez ignored Lopez's instruction, approached King, and shot him six times, including in the chest, back, and groin.

Hernandez fled the scene, and was not apprehended until two years later in New Jersey. Following a jury trial, Hernandez was convicted of the above-mentioned crimes. The trial court imposed an aggregate prison sentence of 18 to 36 years. Hernandez filed a Motion for Reconsideration of Sentence, which the trial court denied.

Hernandez filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Hernandez raises the following questions for our review:

1. Whether the verdict was against the weight and sufficiency of the evidence?

2. Whether the [trial] court abused its discretion in sentencing [Hernandez]?

Brief for Appellant at 5 (some capitalization omitted).

In his first claim, Hernandez contends that there was insufficient evidence to support his conviction of attempted murder.[1] *Id.* at 13. First, Hernandez argues that he was justified in using force against King to protect

---

[1] Hernandez also raises a weight of the evidence claim; however, he failed to raise this challenge with the trial court before sentencing, or in his Motion for Reconsideration of Sentence. *See* Pa.R.Crim.P. 607. Thus, the claim is waived on appeal. *See Commonwealth v. Sherwood*, 982 A.2d 483, 495 (Pa. 2009) (holding that the appellant waived his weight of the evidence claim by not raising it before the trial court).

Lopez from imminent danger of death or bodily harm. *Id.* at 15-18.

Hernandez points out that King is a 350-pound man who had previously

threatened him, beat and choked him, and had a violent reputation within

the community. *Id.* at 16; *see also id.* at 16-17 (noting that Hernandez

never threatened, provoked, or struck King, King never saw Hernandez pull

out his firearm, and King was fighting with Lopez). Hernandez asserts that

the evidence does not demonstrate that this was a mutual fight over an

unpaid bill. *Id.* at 17.

Second, Hernandez contends that the Commonwealth failed to

establish he acted with specific intent to kill. *Id.* at 18. Hernandez argues

that the imperfect self-defense doctrine[2] negates the required specific intent.

*Id.* at 19. Hernandez claims that a finding of imperfect self-defense results

in the offense of voluntary manslaughter. *Id.*

We apply the following standard of review when considering a

challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the
> evidence is whether[,] viewing all the evidence admitted at trial
> in the light most favorable to the verdict winner, there is
> sufficient evidence to enable the fact-finder to find every
> element of the crime beyond a reasonable doubt. In applying
> the above test, we may not weigh the evidence and substitute

---

[2] "A defense of 'imperfect self-defense' exists where the defendant actually, but unreasonably, believed that deadly force was necessary." *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*). "However, all other principles of self-defense must still be met in order to establish this defense." *Id.*

our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015)

(citation omitted).

For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill. Therefore, if a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder. The Commonwealth may establish the *mens rea* required for first-degree murder, specific intent to kill, solely from circumstantial evidence. … [T]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. 2016)

(citations, quotation marks, and brackets omitted).

Pennsylvania law permits the use of force against another person in limited circumstances, such as defense of others. *See* 18 Pa.C.S.A. § 506. With regard to a claim of defense of others, the Crimes Code establishes the following:

**(a) General rule.**--The use of force upon or toward the person of another is justifiable to protect a third person when:

(1)     the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2)     under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3)     the actor believes that his intervention is necessary for the protection of such other person.

**(b) Exception**.--Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

*Id.*

[A]s provided by statute and as interpreted through our case law, to establish the defense of self-defense or defense of others it must be shown that:  a) the slayer or the other he seeks to protect was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he or the other he seeks to protect was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself or the other therefrom; and c) the slayer or the other he seeks to protect did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Hornberger*, 74 A.3d 279, 284–85 (Pa. Super. 2013) (citation, emphasis, and brackets omitted); *see also Commonwealth v. La*, 640 A.2d 1336, 1346 (Pa. Super. 1994) (stating that the claims of self-defense and defense of others are generally addressed in the same manner). "In cases where [this defense is] an issue, the Commonwealth is required to prove beyond a reasonable doubt that the defense does not apply to the

situation in order to sustain the conviction." ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001).

Hernandez testified at trial that following his verbal and physical altercation with King, he left the auto shop and called Lopez. N.T., 7/6/16, at 65-82; ***see also id.*** at 70-71, 76-79 (wherein Hernandez stated that during the initial encounter, King grabbed a knife and threatened to kill Hernandez; King punched Hernandez in the face; and King choked Hernandez). Hernandez stated that when he and Lopez returned to the auto shop, Lopez told Hernandez to stay in the vehicle while he talked to King. ***Id.*** at 89; ***see also id.*** at 85-87 (wherein Hernandez testified that he brought his firearm upon returning to King's shop). Hernandez indicated that Lopez and King exchanged words, and that King's body language was extremely aggressive. ***Id.*** at 90. Hernandez testified that he exited the vehicle and walked toward King and Lopez. ***Id.*** at 92; ***see also id.*** (wherein Hernandez stated that he told a woman in a vehicle close to the shop that "something bad was going to happen."). Hernandez observed Lopez and King exchange punches, and then saw King reach for a weapon from his waist area. ***Id.*** at 92-94; ***see also id.*** at 94 (noting that Hernandez did not see a firearm). Hernandez indicated he was scared and worried about what would happen to Lopez, and as a result, pulled out his firearm and fired multiple shots at King. ***Id.*** at 94-97, 101-02. Hernandez stated that he did not intend to take King's life. ***Id.*** at 96.

The fact-finder found Hernandez's testimony to be unbelievable. **See** Trial Court Opinion, 4/17/17, at 4; **see also Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014) (stating that "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim."). The Commonwealth cannot sustain its burden of proof by relying "on the [fact-finder's] disbelief of the defendant's testimony…. If there are other witnesses, however, who provide accounts of material facts, it is up to the [fact-finder] to reject or accept all, part or none of the testimony of any witness." **Smith**, 97 A.3d at 788 (internal quotations omitted).

King testified that he and Hernandez were involved in a fight over the payment for work on a vehicle. N.T., 7/5/16, at 125-26, 128-29, 131-32; **see also id.** at 155-59 (wherein King stated that he struck Hernandez several times during the fight, and choked him). King stated that Hernandez then left the shop, and later returned with Lopez. **Id.** at 132, 135, 137. King testified that Lopez exited his vehicle, approached King, and attempted to punch King in the face. N.T., 7/5/16, at 138, 140; **see also id.** at 184-85, 188 (wherein an eyewitness to the shooting, Kelsey Wrecsics ("Wrecsics"), testified that Lopez walked up to King and punched him in the mouth, and that Hernandez was walking toward Lopez and King at this time); 219 (wherein an eyewitness to the shooting, Takala Atwood

("Atwood"), stated that Lopez approached King and punched him in the face). King then heard someone yell gun, and King turned and attempted to run away from the scene. *Id.* at 138. Wrecsics and Atwood each testified that prior to the shooting, Hernandez approached them and stated that "if you don't want to see anything crazy, leave now." *Id.* at 183, 220, 221. Wrecsics and Atwood stated that Hernandez then started shooting at King. *Id.* at 185, 221, 22-23 Following the shooting, Hernandez told Wrecsics "I told you so." *Id.* at 191. As a result of the shooting, King suffered six gunshot wounds, including to the chest, back, and groin. N.T., 7/6/16, at 5-6.

Here, the credible evidence establishes that Lopez punched King upon approaching him, and, after hearing that someone had a firearm, King turned and attempted to flee the scene. Further, Hernandez made comments to eyewitnesses both before and after the shooting. Thus, viewed in a light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence for the fact-finder to find, beyond a reasonable doubt, that Hernandez was not acting in defense of others when he shot King. *See Smith*, 97 A.3d at 788 (stating that the fact-finder was free to believe all, part or none of the evidence presented at trial, and to reject the testimony of those witnesses it determined were not credible). Moreover, specific intent to kill may be inferred based upon King's gunshot wounds to his chest, back, and groin. *See Commonwealth v.*

***Padilla***, 80 A.3d 1238, 1244-45 (Pa. 2013) (stating that gunshot wounds to chest and back evidence a specific intent to kill).[3]  Thus, the evidence is sufficient to sustain Hernandez's attempted murder conviction.[4]

In his second claim, Hernandez initially contends that the trial court improperly utilized his prior juvenile adjudications to calculate his prior record score.  Brief for Appellant at 20-21.  Hernandez maintains that the application of juvenile adjudications to elevate an adult's sentence violates the safeguards of ***Apprendi v. New Jersey***, 530 U.S. 466 (2000).  Brief for Appellant at 21, 22.

Hernandez's claim implicates the legality of his sentence.  ***See Commonwealth v. Wolfe***, 140 A.3d 651, 660 (Pa. 2016) (noting that "***Apprendi***-based challenges raise questions related to the legality of a sentence") (citation omitted).  In ***Commonwealth v. Bonner***, 135 A.3d 592, 601-02 (Pa. Super. 2016), this Court specifically held that using prior juvenile adjudications in calculating a prior record score does **not** violate ***Apprendi***.  Thus, Hernandez's claim does not entitle him to relief.

As part of his second claim, Hernandez also challenges the discretionary aspects of his sentence.  "Challenges to the discretionary

---

[3] Further, because Hernandez did not meet the requirements of defense of others, he failed to establish the defense of imperfect self-defense.  ***See Truong***, 36 A.3d at 599.

[4] Hernandez does not set forth a sufficiency argument related to his remaining convictions.

aspects of sentencing do not entitle an appellant to review as of right."

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to

reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> ***
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Moury***, 992 A. 2d at 170 (quotation marks and some citations omitted).

Here, Hernandez filed a timely Notice of Appeal, presented his claim in

a Motion to Reconsider Sentence, and included a Rule 2119(f) Statement in

his brief. Hernandez contends that his standard-range sentence was

excessive because the trial court did not properly consider numerous

mitigating factors, including his age and family support, and provocation by

King. Brief for Appellant at 12. Hernandez's contention does not raise a

substantial question. ***See Commonwealth v. Rhoades***, 8 A.3d 912, 918-

19 (Pa. Super. 2010) (stating that "an allegation that the sentencing court

failed to consider mitigating factors generally does not raise a substantial question for our review.").

Moreover, the trial court had the benefit of a pre-sentence investigation report. *See* N.T., 11/21/16, at 2, 3, 4; *see also Rhoades*, 8 A.3d at 919 (stating that where the trial court had the benefit of a pre-sentence investigation report, "we can assume the [] court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.") (citation and quotation marks omitted); *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (stating "where a trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed") (citations and quotation marks omitted). Accordingly, we are precluded from addressing Hernandez's challenge to the discretionary aspects of his sentence on this basis. *See Rhoades*, 8 A.3d at 919 (wherein this Court concluded that it could not address appellant's discretionary aspects of sentencing claim that the trial court did not consider mitigating factors in imposing a standard-range sentence, as a substantial question was not raised and the trial court had the benefit of a pre-sentence investigation report).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/18/18